# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT
## SOUTHERN DIVISION

S.T., a minor, by and through his Next Friend, JOEL H. TROYER**,**

**Plaintiff**

v.

BRANCH INTERMEDIATE SCHOOL DISTRICT;
KRIS JENKINS, in her individual capacity;
DARRIN ADAIR, in his individual capacity
TRISTA ROOP, in her individual capacity;
KATHY MORICK, in her individual capacity;
CHRISTA CONROY, in her individual capacity;
NATE JOHNSON, in his individual capacity,

Jointly and severally,
**Defendants.**

Case No.

Hon.

**Complaint and Jury Demand**

**MICHAEL L. JONES (P85223)**
MARKO LAW, PLLC
Attorney for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
michael@markolaw.com

## COMPLAINT

NOW COMES Plaintiff, S.T. (Stephen Landry Troyer), a minor, by and through his Next Friend and father, Joel H. Troyer, by and through his attorneys, Marko Law, PLLC, and for his Complaint against Defendants, states as follows:

## NATURE OF ACTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., arising from the deliberate, knowing, and repeated unlawful physical restraint of Plaintiff, a non-verbal autistic child, by Defendants while he attended the Waldron Learning Center in Coldwater, Michigan.

2.      Plaintiff also asserts claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq.; the Equal Protection Clause of the Fourteenth Amendment; and Michigan common-law torts.

3.      During the Spring of 2023, Plaintiff, then ten years old, was repeatedly tied to a chair with scarves around his torso and legs during routine classroom activities, including "circle time," not for any emergency or safety purpose, but solely for the convenience of school staff to keep him still.

4.      Plaintiff thrashed his body in distress, attempting to escape the restraints, demonstrating he was being held completely against his will.

5.      Despite being reported by a paraprofessional witness to school administrators, Defendants concealed these illegal restraints from Plaintiff's parents,

**Complaint and Jury Demand**
*Troyer v. Branch ISD, et al*                                               Michael L. Jones, Esq.
Case No.:                                                                              Jon R. Marko, Esq.

failed to document or report them as required by law and policy, and took no meaningful action to protect Plaintiff or other vulnerable children in the classroom.

6. At all times to this Complaint, Defendant Kris Jenkins served as Superintendent of Branch ISD and held, under Board Policy 1111, "single control" of the organization, operation, and evaluation of the total school program of the District. She bore the final, non-delegable responsibility for all aspects of District operation, including the safety and constitutional treatment of every student in the District's custody. Jenkins subsequently announced her retirement, effective June 30, 2025, and has since been succeeded as Superintendent by Defendant Darrin Adair.

7. The conduct of Defendants, particularly Defendant Roop in repeatedly and mechanically restraining a non-verbal autistic child with no legitimate pedagogical purpose, and Defendant Morick in striking S.T. in the face, constitutes force so brutal, demeaning, and disproportionate to any legitimate need that it shocks the conscience within the meaning of the Fourteenth Amendment substantive due process standard established in *Domingo v. Kowalski*, 810 F.3d 403 (6th Cir. 2016) and *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987).

8. Defendants only acknowledged the illegal restraints when confronted by Plaintiff's father in April 2023, at which point they admitted on a recorded meeting that the restraints had occurred.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*
Case No.:

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

9.     This lawsuit seeks compensatory and punitive damages, injunctive relief, and attorneys' fees to vindicate Plaintiff's constitutional rights to bodily integrity, to be free from state-sanctioned abuse, and to receive a free and appropriate public education in a safe and non-abusive environment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and 20 U.S.C. § 1400 et seq. (IDEA).

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Branch County, Michigan, which is within the Western District of Michigan, Southern Division.

## PARTIES

### *Plaintiff*

13.     Plaintiff S.T. (hereinafter "S.T." or "Plaintiff") is a minor child, born in 2013, who resides in the State of Michigan.

14.     S.T. is non-verbal and has been diagnosed with Autism Spectrum Disorder, Crohn's Disease, and immune dysfunction.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

15.     S.T. is a child with a disability within the meaning of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., and is entitled to a free and appropriate public education ("FAPE").

16.     S.T. is also a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Michigan PWDCRA, MCL 37.1101 et seq.

17.     Joel H. Troyer is S.T.'s father and brings this action as S.T.'s Next Friend. Joel resides in Indiana.

### *Defendants*

18.     Defendant Branch Intermediate School District ("Branch ISD" or "the District") is a Michigan intermediate school district and public body organized under Michigan law, with its principal office located at 370 Morse Street, Coldwater, Michigan 49036.



19.     At all times relevant to this Complaint, Branch ISD operated the Waldron Learning Center, a center-based special education school located at 214 Bishop Avenue, Coldwater, Michigan 49036.

20.     Branch ISD publishes as its motto "Nothing less than success ... for ALL!" and its Mission Statement declares that "[o]ur mission is to ensure life-long learning opportunities to students and citizens in our service area" and that Branch

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                        Michael L. Jones, Esq.
Case No.:                                                            Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

ISD "will provide leadership in cooperation with other local, regional, and state educational service agencies ... to facilitate the effective and efficient delivery of high-quality programs and services."

21.     Branch ISD receives federal funding under IDEA and is subject to all applicable federal and state laws governing the education of children with disabilities.

22.     Branch ISD is a public entity within the meaning of Title II of the ADA and a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.

23.     Defendant Kris Jenkins was at all times relevant to the events described in this Complaint, the Superintendent of Branch ISD. She is sued in her individual capacity. Jenkins subsequently announced her retirement from Branch ISD effective June 30, 2025, and Defendant Darrin Adair succeeded her as Superintendent.

24.     As Superintendent during the relevant period, Jenkins held final, non-delegable authority over every aspect of the District's programs and operations. Board Policy 1111 expressly placed "the organization, operation, and evaluation of the total school program of the District and all matters related to the administration thereof" under "the single control of the Superintendent," providing that "[t]he Superintendent is authorized to delegate his/her administrative authority to other

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                                    Michael L. Jones, Esq.
Case No.:                                                                              Jon R. Marko, Esq.

employees for the proper and complete performance of their duties, but the final responsibility remains with the Superintendent."

25.     Board Policy 1230 further required the Superintendent to: "ensure that all aspects of District operation comply with State laws and regulations as well as Board contracts and policies"; "establish and maintain educational plans required by law"; "evaluate the progress of the professional and support staff toward the attainment of educational goals"; "recommend changes in instructional or staffing patterns based on an analysis of staff and program progress"; and "work cooperatively with parents and community groups concerned with District programs." Jenkins bore each of these responsibilities during the period in which S.T. was subjected to repeated unlawful restraint.

26.     Defendant Darrin Adair was, at all times relevant to the events described in this Complaint, the Assistant Superintendent of Branch ISD, with supervisory authority over the District's special education programming and operations, including the Waldron Learning Center. He is sued in his individual capacity. As of the filing of this Complaint, Adair serves as Superintendent, having succeeded Jenkins. The 2025-2026 Employee Handbook identifies Adair as Superintendent of Branch ISD

27.     Defendant Nate Johnson is and was at all relevant times the Assistant Superintendent and Director of Special Education for Branch ISD, with offices at

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*
Case No.:

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW

214 Bishop Avenue, Coldwater, Michigan — the same building as Waldron Learning Center. Johnson exercised direct supervisory authority over the special education programs at Waldron Learning Center, including the classroom in which S.T. was abused. He is sued in his individual capacity.

28.    Defendant Trista Roop  was at all relevant times a teacher employed by Branch ISD, assigned to teach a special education classroom at Waldron Learning Center. She is sued in her individual capacity.

29.    Defendant Kathy Morick was at all relevant times a paraprofessional employed by Branch ISD, assigned to work in the special education classroom at Waldron Learning Center under Defendant Roop's supervision. She is sued in her individual capacity.

30.    Defendant Christa Conroy is and was at all relevant times a Supervisor employed by Branch ISD, whose supervisory responsibilities encompassed "Center-Based Programs," "Waldron Learning Center," "Pathways," "Early Childhood Programs," and "Speech Therapists." Conroy exercised direct supervisory authority over the educational programs and staff at Waldron Learning Center. She is sued in her individual capacity.

31.    At all times relevant herein, all individual Defendants acted under color of state law, within the scope of their employment, and/or pursuant to the customs, policies, and practices of Branch ISD.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                                                    Michael L. Jones, Esq.
Case No.:                                                                                              Jon R. Marko, Esq.

## <u>FACTUAL ALLEGATIONS</u>

### *A. S.T.'s Enrollment, Disability, and Entitlement to Special Education*

32.    S.T. attended Waldron Learning Center, a Branch ISD special education facility, from approximately August 2020 through June 2022, and was enrolled in a classroom designated as a "specialized resource room."

33.    S.T. is non-verbal, communicates through limited sign language and, more recently, through a letter board using the "Spelling to Communicate" method.

34.    S.T.'s autism diagnosis includes significant challenges with sensory motor integration, apraxia, and sensory processing, which cause him to have difficulty sitting still for extended periods.

35.    S.T.'s inability to sit still or remain in one position is a manifestation of his disability. It is not a behavioral choice capable of being corrected through physical restraint, which is contraindicated for children on the autism spectrum with sensory processing disorders.

36.    Branch ISD's own description of the Waldron Learning Center on its website acknowledges that "[t]he school provides educational services for students with moderate to severe impairments." Branch ISD's Special Education statement further provides that "[w]e believe the purpose of our special education program is to recognize each student as a unique individual" and that "together we work to educate students to their fullest potential and develop in each student a personal

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                               Jon R. Marko, Esq.

feeling of well-being and self worth." These representations describe the very obligations that Defendants violated in their treatment of S.T.

37. Upon information and belief, despite being a classroom designated for students with Autism Spectrum Disorder ("ASD"), S.T.'s classroom was staffed by Defendant Roop, a teacher with no autism certification or endorsement, only a Learning Disabilities endorsement.

38. Upon information and belief, the classroom was intentionally mislabeled as a "resource room" to avoid the requirement that it be staffed by an autism-certified teacher and have appropriate staffing ratios for students with significant behavioral needs.

## B. The Unlawful Physical Restraints

39. Beginning in or around early 2021 and continuing through Spring 2023, Defendant Roop, with the participation and assistance of Defendant Morick and other classroom staff, repeatedly restrained S.T. by tying him to a chair with scarves.

40. The scarves were tied around S.T.'s torso and legs, securing him to the chair to prevent him from moving.

41. S.T. was restrained in this manner during routine classroom activities, including "circle time," "skill work," and "art" activities-not because he posed any imminent risk of harm to himself or others.

42.     The restraints were used solely for the convenience of school personnel to keep S.T. still and seated during group activities due to his sensory motor stimulation and apraxia.

43.     This type of restraint constitutes "mechanical restraint" as that term is defined and understood under Michigan law and Branch ISD policy. as that term is defined and understood under Michigan law and Branch ISD policy. Board Policy 5630.01 adopts the Michigan Department of Education's Policy for the Emergency Use of Seclusion and Restraint and directs that "the use of emergency seclusion and emergency physical restraint is a last resort intervention that may be used only when a student's behavior poses an imminent risk to the safety of the student or others and immediate intervention is required." No such emergency existed during circle time.

44.     Moreover, Board Policy 5630 expressly provides that "corporal punishment shall not be permitted" and that "\[a\] person, within the scope of their employment, may use and apply reasonable force and restraint to quell a disturbance threatening physical injury to others, to obtain possession of weapons or other dangerous objects upon or within the control of the student, in self-defense, or for the protection of persons or property" — none of which conditions applied. The same policy provides that if any staff member "deliberately inflicts, or causes to be inflicted, physical pain by hitting, paddling, spanking, slapping, or makes use of any

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                                          Michael L. Jones, Esq.
Case No.:                                                                                    Jon R. Marko, Esq.

other kind of physical force as a means of disciplining a student, s/he may be subject to discipline by this Board and possibly criminal assault charges as well."

45. S.T. would thrash his body violently, attempting to escape the restraints, demonstrating that he was being held completely against his will and experiencing severe distress.

46. LeAnne Large, a paraprofessional employed in the classroom, witnessed these restraints and was initially directed by Defendant Roop to participate in tying S.T. and other students to chairs.

47. The restraints left no visible marks or physical injuries on S.T.'s body, but caused him significant psychological and emotional trauma.

48. S.T. confirmed to his father, using his letter board, that he had been tied to chairs with scarves or other apparatus to keep him seated during circle time and other group activities. When asked, S.T. immediately spelled "YES" on his board and became noticeably dysregulated.

## C. Additional Acts of Abuse by Defendant Morick

49. In addition to the unlawful restraints, Defendant Kathy Morick struck S.T. in the face/mouth on at least one occasion.

50. When Morick realized that LeAnne Large had witnessed her striking S.T., Morick stated, "You didn't see that."

**Complaint and Jury Demand**
*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

51.    When S.T.'s father asked him via letter board whether he had been struck in the face on one or multiple occasions by Kathy Morick, S.T. became completely dysregulated, began signing "YES" while verbally trying to say "YES" over and over, pointed to the "Y" on his board, and then became overwhelmed, crying and excessively agitated.

52.    The striking of a non-verbal, disabled child in the face, followed by the statement "You didn't see that," is direct evidence of malicious intent and an effort to conceal abuse. This is precisely the type of conduct that courts have found evidence of bad faith and lack of legitimate pedagogical purpose. See *Domingo*, 810 F.3d at 415 (noting the Fourth Circuit's finding of conscience-shocking conduct where teachers were recorded "insulting the child, cursing at her, conspiring to prevent her from receiving necessary educational services," evidence that proved "their abusive conduct had no valid purpose; instead, it was motivated by malice, callousness, and deliberate indifference to the child's rights").

53.    Defendant Roop also engaged in other abusive conduct toward S.T. and other students, including yelling profusely at students, grabbing them by the wrists while gritting her teeth, grabbing students' faces, kicking students under tables, and setting students down forcefully.

54.    Branch ISD's own Employee Conduct standards, distributed to all staff in the Employee Handbook, expressly prohibit "[n]egligence which may endanger

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                        Michael L. Jones, Esq.
Case No.:                                                            Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

the health, safety, or wellbeing of another person" and require that all BISD employees "maintain the highest standards of conduct and act in a mature and responsible manner at all times." Each of these obligations was violated by Defendants Roop and Morick.

### D. Other Students Were Similarly Victimized

55.    Other students in the classroom, including W. L., D. W., and L. S., were also subjected to similar restraints, physical abuse, yelling, and mistreatment by Defendant Roop and other staff members.

56.    W. L.'s grandmother reported that W. would cry and say "no, no" when Defendant Roop came to get him from the car, would only go willingly with certain paraprofessionals, and became significantly more aggressive at home-behaviors that ceased once he was removed from the classroom.

57.    Multiple paraprofessionals, including LeAnne Large and Qahrara Abdullah, quit or left Defendant Roop's classroom due to the poor treatment of students and the toxic work environment.

### E. Reports to Administration and Deliberate Indifference

58.    LeAnne Large reported her concerns about the illegal scarf restraints to Nate Johnson, then an administrator at Branch ISD.

59.    Upon Ms. Large's report, the use of scarf restraints temporarily stopped.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                                          Michael L. Jones, Esq.
Case No.:                                                                                     Jon R. Marko, Esq.

60.    Ms. Large also reported to Defendants Johnson, Adair, and Conroy multiple times regarding ongoing mistreatment of students by Defendant Roop, including grabbing, yelling, kicking, and other aggressive conduct.

61.    Board Policy 1662 (Anti-Harassment) expressly provides that "[a]ny Board employee who directly observes unlawful harassment of a student is obligated, in accordance with this policy, to report such observations to one (1) of the Compliance Officers within two (2) business days." It further provides that "[a]ll members of the School District community must report incidents of harassment that are reported to them to the Compliance Officer within two (2) business days of learning of the incident." None of the supervisory Defendants complied with these mandatory obligations.

62.    Board Policy 1662 further identifies as a prohibited act warranting immediate discipline: "Disregarding, failing to investigate adequately, or delaying investigation of allegations of harassment, when responsibility for reporting and/or investigating unlawful harassment charges comprises part of one's supervisory duties." Defendants Johnson, Adair, Conroy, and Jenkins each engaged in precisely this prohibited conduct.

63.    Despite these repeated reports, Defendants Jenkins, Adair, Conroy, and Johnson took no meaningful action to protect S.T. or other students in the classroom.

**Complaint and Jury Demand**

64.    Ms. Large was told by Johnson and Adair "not to start drama" when she reported concerns about student mistreatment.

65.    Specialized staff, including the ASD consultant, social worker, occupational therapist, and speech therapist, reported having difficulty getting Defendant Roop to accept help or suggestions, yet no corrective action was taken.

66.    Eventually, Ms. Large felt she had no choice but to resign from her position in April 2023 due to the ongoing mistreatment of students and the administration's failure to take action.

### F. Retaliation Against a Whistleblower

67.    LeAnne Large's reports to Defendants Johnson, Adair, and Conroy were protected activity under Branch ISD's Whistleblower Protection Policy. Board Policy 1411, 3211 & 4211 provides that "[i]t is the responsibility of an employee who is aware of conduct on the part of any Board member or employee that possibly violates Federal or State law, or Board policy, to call this conduct to the attention of his/her immediate supervisor" and that "[a]ny employee making such a report shall be protected from discipline, retaliation, or reprisal for making such report."

68.    The same policy provides that "[e]mployees may also be subject to disciplinary action, up to and including termination, if they are aware of a violation of Federal, State, or local law involving or relating to the business of the District and

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                                      Michael L. Jones, Esq.
Case No.:                                                                                    Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW

they do not make a report confirmed in writing to a supervisor in accordance with this policy."

69.    Rather than protecting Ms. Large as required by this policy, Defendants Johnson and Adair told her "not to start drama," effectively retaliating against and discouraging her from continuing to report the abuse. This response was itself a violation of Branch ISD's own Whistleblower Protection Policy and contributed directly to the continuation of abuse against S.T. and other students.

## G. Failure to Notify Parents

70.    At no time did any Defendant notify S.T.'s parents that he had been illegally restrained in the classroom.

71.    Branch ISD Policy No. po5630.01 on Student Seclusion and Restraint requires that parents be notified in writing or orally immediately following any use of restraint, and that a written report be provided within one school day or seven calendar days.

72.    No such notification or written report was ever provided to S.T.'s parents.

73.    S.T.'s parents first learned of the restraints in approximately early April 2023 when LeAnne Large contacted them and provided them with a written

**Complaint and Jury Demand**
*Troyer v. Branch ISD, et al*                                          Michael L. Jones, Esq.
Case No.:                                                                  Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

complaint she had submitted to Branch ISD administration detailing the abuse she had witnessed.

## H. April 12, 2023 Meeting and Admission

74. On April 12, 2023, Joel Troyer met with Defendants Kris Jenkins, Darrin Adair, Hilary Curtis, and Nate Johnson at Waldron Learning Center to discuss the allegations.

75. During the April 12, 2023 meeting, Defendants admitted that S.T. was in fact restrained illegally.

76. Defendants could not answer why S.T.'s parents were never notified of the restrants and why no restraint report was ever sent.

## I. Failures of Mandatory Reporting

77. Board Policy 8462 provides that "[e]ach professional staff member employed by this District and all other persons employed by this District who are mandatory reporters under the law who has reasonable cause to suspect child abuse or neglect shall be responsible for reporting immediately every case, whether ascertained or suspected, of abuse or neglect resulting in physical or mental injury to a student by other than accidental means." The policy requires the staff member to "immediately notify the local office of the Central Registry of the Department of Human Services (MDHHS) by telephone" and to "also immediately notify their supervisor."

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                      Michael L. Jones, Esq.
Case No.:                                                         Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

78.     The same policy further provides that "[b]uilding administrators should be mindful of the possibility of physical or mental abuse being inflicted on a student by a staff member. Any such instances, whether real or alleged, should be dealt with in accordance with the staff/student handbooks."

79.     Despite Ms. Large's reports of illegal restraint and physical abuse, Defendants failed to: report the abuse to Child Protective Services or law enforcement; notify S.T.'s parents; conduct a thorough and impartial investigation; and take immediate action to protect S.T. and other students.

80.     In April 2023, S.T.'s father filed a police report with the Coldwater Police Department.

81.     During the police investigation, school staff provided conflicting accounts, with some denying knowledge of scarf restraints while others acknowledged that restraint chairs were "over used."

## J. Systemic Failures, Pattern of Conduct, and Monell Liability

82.     The abuse of S.T. was not an isolated incident. It was the foreseeable and direct result of a series of institutional choices and failures by Branch ISD policymakers — above all, Superintendent Jenkins and her subordinates — that collectively constituted a custom and policy causing the deprivation of S.T.'s constitutional rights.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                       Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

83.   Branch ISD administrators were aware of a pattern of staff turnover in Defendant Roop's classroom due to her mistreatment of students and staff.

84.   Upon information and belief, the classroom was deliberately misclassified as a "resource room" rather than a program for students with moderate to severe autism, allowing Branch ISD to avoid requirements for autism-certified teachers and appropriate staffing levels.

85.   Upon information and belief, Branch ISD hired Defendant Roop, who had no autism training or certification, to teach a classroom of six (6) students with moderate to severe autism and complex behavioral needs. Branch ISD's own Job Descriptions policy (Board Policy 1400) required that "employees will be evaluated, at least in part, against their job descriptions" and that at the time of each job vacancy the job description be "reviewed, and revised as needed, prior to the issuance of a job vacancy posting." The District either ignored this obligation when hiring Roop or placed her in a position to which she was demonstrably unqualified.

86.   Defendants failed to provide Defendant Roop and other classroom staff with proper training on: Autism Spectrum Disorder and the unique needs of non-verbal autistic children; lawful use of seclusion and restraint under Michigan law and Branch ISD policy; de-escalation techniques and positive behavioral interventions; mandatory reporting requirements; and how to communicate with non-verbal children and recognize signs of distress. Board Policy 3242 required that

**Complaint and Jury Demand**
*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                       Jon R. Marko, Esq.

non-tenured professional staff members receive fifteen (15) days of professional development related to an Individual Development Plan during their first three years of employment, and that the Superintendent or designee arrange for assignment of mentors to demonstrate proficiency. Defendant Roop received neither adequate mentorship nor the specialized professional development essential to the student population she was assigned to serve.

87.     Defendant Roop herself admitted that the students in her classroom "were not like previous classes" and expressed frustration that they did not respond to her methods, yet Defendants provided no additional training or support. LeAnne Large reported that "not one person, outside of [herself], has any experience with [autism]" in the classroom, and that teaching children on the spectrum "is not something you can just do."

88.     Branch ISD's supervisory policymakers — Jenkins, Adair, Conroy, and Johnson — had actual, documented, specific knowledge of the ongoing illegal restraints and physical abuse. When LeAnne Large personally reported these violations, the response was to tell her "not to start drama." Not one of these officials directed an investigation, removed Roop from the classroom, notified parents, reported the abuse to MDHHS, or took any meaningful protective action. This inaction violated Board Policy 1662's express prohibition on "[d]isregarding, failing to investigate adequately, or delaying investigation of allegations of harassment,

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                      Michael L. Jones, Esq.
Case No.:                                                                  Jon R. Marko, Esq.

when responsibility for reporting and/or investigating unlawful harassment charges comprises part of one's supervisory duties."

89.    Board Policy 1111 vested in Superintendent Jenkins "single control" over "the organization, operation, and evaluation of the total school program of the District and all matters related to the administration thereof," providing that "final responsibility remains with the Superintendent" regardless of any delegation. Board Policy 1230 required Jenkins to "ensure that all aspects of District operation comply with State laws and regulations as well as Board contracts and policies," to "evaluate the progress of the professional and support staff toward the attainment of educational goals," and to "recommend changes in instructional or staffing patterns based on an analysis of staff and program progress." Jenkins was on notice, through direct reports reaching her senior staff, that children in Branch ISD's custody were being unlawfully restrained. Her failure to act was not merely negligent omission — it was a breach of the specific, mandatory, and non-delegable supervisory duties that Michigan law and Branch ISD's own Board Policy placed on the office of Superintendent.

90.    Branch ISD's Board Policy 7440.01 authorized the use of video surveillance and electronic monitoring equipment throughout the District, including the Waldron Learning Center facility. Branch ISD's website affirmatively publicizes that the Waldron Learning Center building is "equipped with security cameras." Yet

22

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

no camera footage of the abuse has been produced. Plaintiff is entitled to full discovery concerning the existence, location, scope, preservation, and fate of any video recordings of the relevant classrooms during the period of the abuse. Any failure to preserve such recordings constitutes potential spoliation of evidence.

91.    Branch ISD maintained an unofficial but effective custom of protecting staff who engaged in abuse of disabled students rather than protecting the children in its custody or reporting the abuse to parents or authorities as required by law. No restraint reports were ever provided to S.T.'s parents; the abuse was never reported to Child Protective Services; and when parents raised concerns in April 2023, the District admitted the illegal restraints occurred but could not explain why no reports were made.

92.    Branch ISD's publicly stated Mission Statement declares its commitment to "ensure life-long learning opportunities" and to "facilitate the effective and efficient delivery of high-quality programs and services," while its Special Education program statement commits to developing "in each student a personal feeling of well-being and self worth." These representations were distributed in the Employee Handbook provided to Defendant Roop, Defendant Morick, and all other Waldron staff. The systematic abuse of a non-verbal autistic child in Branch ISD's custody was the complete antithesis of every commitment Branch ISD made to its students, their families, and the public.

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW

93.    Defendant Roop was not terminated or disciplined until after parents learned of the abuse in April 2023 and demanded accountability.

### J. Damages to S.T.

94.    As a result of Defendants' unlawful conduct, S.T. suffered and continues to suffer psychological and emotional trauma.

95.    S.T. exhibited behavioral changes following the abuse, including not wanting to go to school.

96.    When S.T.'s father now attempts to grab or hold him during play, S.T. looks panicked and scared, evidencing trauma from being forcibly restrained.

97.    When questioned about the abuse via letter board, S.T. became severely dysregulated, cried, and showed extreme agitation, demonstrating ongoing psychological harm.

98.    S.T. was deprived of his constitutional right to bodily integrity and his right to be free from state-sanctioned abuse while in the custody and care of public school officials.

99.    S.T. was deprived of his right under IDEA to receive a free and appropriate public education in a safe, least restrictive environment appropriate to his needs.

100.    S.T. has suffered a loss of educational services, emotional distress, mental anguish, fear, anxiety, humiliation, and loss of dignity.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                          Michael L. Jones, Esq.
Case No.:                                                              Jon R. Marko, Esq.

## CAUSES OF ACTION

### COUNT I
42 U.S.C. § 1983 — Violation of Fourteenth Amendment Substantive Due Process
(Excessive Force / Bodily Integrity)
**Against Defendants Trista Roop and Kathy Morick**

101.    Plaintiff incorporates by reference all preceding paragraphs.

102.    The Fourteenth Amendment to the United States Constitution protects public school students from deprivations of liberty, including the right to personal security and bodily integrity, at the hands of state actors. *Domingo v. Kowalski*, 810 F.3d 403, 410 (6th Cir. 2016) (recognizing "public school students have the right 'to be free of state intrusions into realms of personal privacy and bodily security'") (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

103.    To establish that a teacher violated a student's Fourteenth Amendment right to substantive due process, a plaintiff must demonstrate that the teacher's conduct was "so brutal, demeaning, and harmful as literally to shock the conscience." *Domingo*, 810 F.3d at 410-11. The relevant standard requires that "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 678 (6th Cir. 2016) (quoting *Webb*, 828 F.2d at 1158).

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                Michael L. Jones, Esq.
Case No.:                Jon R. Marko, Esq.

104. Courts in the Sixth Circuit evaluate such claims under the four-factor framework of *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168 (3d Cir. 2001), as adopted in *Domingo*, 810 F.3d at 411: (a) Was there a pedagogical justification for the use of force? (b) Was the force excessive to meet the legitimate objective? (c) Was the force applied in a good-faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm? (d) Was there a serious injury?

105. **No Pedagogical Justification.** The scarf restraints and the strike to S.T"'s face had no legitimate pedagogical justification. Restraining a non-verbal autistic child with scarves during circle time to keep him still for the convenience of staff is not "capable of being construed as an attempt to serve pedagogical objectives." *Domingo*, 810 F.3d at 411. Branch ISD's own Board Policy 5630.01 permits restraint only when "a student's behavior poses an imminent risk to the safety of the student or others and immediate intervention is required." No such emergency existed. And Defendant Morick's striking of S.T. in the face and instruction to a witness "You didn't see that" cannot by any stretch constitute a legitimate disciplinary or educational act.

106. **Force Was Excessive.** The use of scarves to bind a ten-year-old, non-verbal, autistic child to a chair by the torso and legs — repeatedly, over an extended period — during ordinary classroom activities was grossly disproportionate to any need presented.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*
Case No.:

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

107.    **Malicious and Sadistic Intent.** The pattern of conduct demonstrates that Defendants Roop and Morick acted with malice, sadism, and callous indifference to S.T.'s safety and dignity, evidenced by: the concealment of the restraints from parents; Defendant Morick's explicit attempt to conceal her conduct; the continued use of restraints after their illegality was temporarily halted following Ms. Large's report; and the complete absence of documentation or incident reporting.

108.    **Serious Injury.** The psychological harm to S.T. is extensive. As a non-verbal autistic child, S.T. is among the most vulnerable and least able to communicate distress. As the *Domingo* dissent recognized, "the fact that a child may have difficulty in expressing emotional disturbance from such treatment would counsel in favor of greater latitude, not less, in consideration of that factor." *Domingo*, 810 F.3d at 418 (Boggs, J., dissenting in part)

109.    Defendants Roop and Morick are not entitled to qualified immunity because the right of a non-verbal, disabled student to be free from mechanical restraints imposed for administrative convenience, and to be free from being struck in the face by a state actor, were clearly established at the time of the conduct. No reasonable teacher could have believed otherwise.

110.    As a direct and proximate result of these constitutional violations, S.T. has suffered severe emotional distress, psychological trauma, fear, anxiety, humiliation, loss of dignity, and other damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants Roop and Morick on Count I, together with compensatory and punitive damages, costs, attorneys' fees pursuant to 42 U.S.C. § 1988, and all other relief this Court deems just and proper.

## COUNT II
### 42 U.S.C. § 1983 — Supervisory Liability
### Against Defendants Jenkins, Adair, Conroy, and Johnson

111.    Plaintiff incorporates by reference all preceding paragraphs.

112.    Supervisory officials may be held liable under § 1983 where a plaintiff demonstrates that the supervisors either directly encouraged or authorized the specific incidents of misconduct, or that they had actual or constructive knowledge that their subordinates' unconstitutional conduct was occurring and were deliberately indifferent to it.

113.    Defendants Jenkins, Adair, Conroy, and Johnson, in their supervisory and administrative capacities, had actual, documented knowledge of the ongoing abuse. LeAnne Large personally reported the illegal scarf restraints and the ongoing

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                   Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

physical mistreatment of students, including S.T., to Defendants Johnson, Adair, and Conroy on multiple occasions.

114.   **Defendant Jenkins – Superintendent.** Jenkins bore the highest level of responsibility. As Superintendent, she was the sole officer in whom Board Policy 1111 vested "single control" over "the organization, operation, and evaluation of the total school program of the District," with "final responsibility" remaining with her regardless of any delegation. Board Policy 1230 required her to "ensure that all aspects of District operation comply with State laws and regulations," to "evaluate the progress of the professional and support staff," and to "recommend changes in instructional or staffing patterns based on an analysis of staff and program progress." Notwithstanding these obligations and her actual knowledge, Jenkins took no meaningful action to protect S.T. or his classmates. She attended the April 12, 2023 meeting at which the illegal restraints were admitted and the District's total failure to notify parents was exposed, and still there is no evidence of prompt corrective action, investigation, or referral to authorities.

115.   **Defendant Adair- Assistant Superintendent.** Adair was present at the April 12, 2023 meeting and received LeAnne Large's reports directly. He told Large "not to start drama" — an affirmative act suppressing protected whistleblowing and enabling the continuation of abuse. He failed to exercise his supervisory authority to remove Roop, notify parents, or report the abuse.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                          Michael L. Jones, Esq.
Case No.:                                              Jon R. Marko, Esq.

116.   **Defendant Conroy – Supervisor Over Waldron Learning Center.** Conroy's supervisory responsibilities under the Employee Handbook specifically encompassed "Center-Based Programs" and "Waldron Learning Center." She received Large's reports and took no meaningful action. Conroy's failure to act on direct reports of abuse in the programs she directly supervised constitutes deliberate indifference.

117.   **Defendant Johnson - A ssistant Superintendent and Director of Special Education.** Johnson served as "Assistant Superintendent and Director of Special Education" with offices at 214 Bishop Avenue — the same building as Waldron Learning Center. Johnson was the first administrator to receive Large's specific report of scarf restraints, and his only response was to temporarily stop the practice. When the abuse continued and Large reported further mistreatment, Johnson told her "not to start drama." His proximity to, authority over, and knowledge of the abuse makes his deliberate indifference unmistakable.

118.   By tolerating, tacitly encouraging, and concealing the abuse, Defendants Jenkins, Adair, Conroy, and Johnson directly facilitated the continued violation of S.T.'s constitutional rights. Their deliberate indifference to a known pattern of abuse was the moving force behind the continuing harm to S.T.

119.   As a direct and proximate result of these Defendants' deliberate indifference, S.T. has suffered the harms described herein.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                               Jon R. Marko, Esq.

**WHEREFORE**, Plaintiff demands judgment against Defendants Jenkins, Adair, Conroy, and Johnson on Count II, together with compensatory and punitive damages, costs, attorneys' fees pursuant to 42 U.S.C. § 1988, and all other relief this Court deems just and proper.

## COUNT III

42 U.S.C. § 1983 — Monell Municipal Liability (Policy, Custom, and Failure to Train)

**Against Defendant Branch Intermediate School District**

120.   Plaintiff incorporates by reference all preceding paragraphs.

121.   A municipality may be held liable under § 1983 where "a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Gohl*, 836 F.3d at 685 (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A policy of inadequate training or supervision is a recognized basis for Monell liability. See *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) applies the *City of Canton* standard: deliberate indifference is established where (1) training was inadequate for the tasks performed; (2) the inadequacy resulted from deliberate indifference; and (3) the inadequacy caused the constitutional injury.

122.   **Custom of Deliberate Misclassification.** Branch ISD, through its policymakers Jenkins and Adair, maintained a custom or policy of deliberately

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                          Michael L. Jones, Esq.
Case No.:                                                                         Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

misclassifying autism classrooms as "resource rooms" to circumvent Michigan's legal requirements for autism-certified teachers and appropriate staffing ratios for students with severe autism and complex behavioral needs. This deliberate misclassification directly caused the placement of an unqualified teacher over a classroom of six non-verbal autistic children with no appropriate training or supervision.

123.    **Failure to Train.** Branch ISD knew it was operating a specialized program for children with severe autism but failed to provide any meaningful training to classroom staff in: the nature of autism and sensory processing disorders; lawful use of restraint; de-escalation and positive behavioral supports required by IDEA; mandatory reporting; or how to communicate with non-verbal children. Board Policy 3242 required that non-tenured staff receive fifteen (15) days of professional development and be assigned mentors during the first three years. This obligation was not fulfilled with respect to the staff in Roop's classroom. The need for such training was obvious given the unique vulnerabilities of the student population. See *Ellis*, 455 F.3d at 700-01.

124.    **Failure to Supervise.** Despite receiving multiple, specific, documented complaints from paraprofessional LeAnne Large about ongoing abuse of students in Defendant Roop's classroom, Branch ISD through its policymakers took no meaningful corrective action-other than temporarily stopping the scarves and telling

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                                    Michael L. Jones, Esq.
Case No.:                                                                              Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

Ms. Large not to "start drama." The failure to act in the face of repeated, credible reports of abuse itself constitutes deliberate indifference. See *Ellis*, 455 F.3d at 701.

125. **Custom of Concealment and Non-Reporting.** Branch ISD maintained an unofficial but effective custom of protecting staff who engaged in abuse of disabled students rather than reporting the abuse to parents or authorities as required by law. No restraint reports were ever provided to S.T.'s parents; the abuse was never reported to Child Protective Services; and when parents raised concerns in April 2023, the District admitted the illegal restraints occurred but could not explain why no reports were made.

126. **Inadequate Policies and Practices.** Although Branch ISD adopted a written policy on seclusion and restraint that nominally prohibited mechanical restraint, the District failed to implement, enforce, monitor, or train staff on that policy, rendering it effectively meaningless. The widespread use of scarf restraints in Defendant Roop's classroom over an extended period without any documentation or discipline demonstrates a de facto custom permitting unlawful restraint.

127. **Policymaker Ratification.** The actions and inactions of Superintendent Jenkins constitute the acts of a final policymaker whose deliberate indifference to known constitutional violations ratifies those violations as District custom. Board Policy 1111 assigned her "final responsibility"for all District operations. Her failure to act was indistinguishable from institutional authorization.

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

128.   Each of the foregoing customs, policies, and practices was the moving force behind the violations of S.T.'s constitutional rights and caused the damages described herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant Branch ISD on Count III, together with compensatory damages, injunctive relief, costs, attorneys' fees pursuant to 42 U.S.C. § 1988, and all other relief this Court deems just and proper.

## COUNT IV
### 42 U.S.C. § 1983 — Violation of the Equal Protection Clause (Fourteenth Amendment)
### Against All Defendants

129.   Plaintiff incorporates by reference all preceding paragraphs.

130.   The Equal Protection Clause of the Fourteenth Amendment prohibits states and their agents from intentionally treating individuals differently on the basis of disability without a rational relationship to a legitimate governmental purpose. *Gohl*, 836 F.3d at 684 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

131.   The abusive physical restraints and physical abuse directed at S.T. and other students in Defendant Roop's classroom were targeted at students because of their disabilities. Every student in the classroom had a disability; no non-disabled students were subjected to mechanical restraint, being struck in the face, or the other forms of physical abuse described herein.

132. The abuse was disability-specific in both its targets and its nature: it was premised on the students' inability to speak, to resist effectively, or to report the abuse to their parents. As the dissent in *Gohl* observed, the abuse "happened to students with disabilities, but not to the other students" at the school, and a jury could find from such evidence that Defendants intentionally treated disabled students differently because of their disability. *Gohl*, 836 F.3d at 693 (Clay, J., dissenting)

133. As a direct and proximate result, S.T. has suffered the harms described herein.

**WHEREFORE**, Plaintiff demands judgment against all Defendants on Count IV, together with compensatory and punitive damages, costs, attorneys' fees pursuant to 42 U.S.C. § 1988, and all other relief this Court deems just and proper.

## COUNT V
### Violation of the Individuals with Disabilities Education Act (IDEA) — Denial of Free Appropriate Public Education (FAPE)
### Against Defendant Branch Intermediate School District

134. Plaintiff incorporates by reference all preceding paragraphs.

135. S.T. is a "child with a disability" within the meaning of IDEA, 20 U.S.C. § 1415(b)(6), and is entitled to a free and appropriate public education.

136. IDEA requires that S.T.'s Individualized Education Program ("IEP") include positive behavioral interventions and supports where behavior impedes learning, and prohibits the use of aversive or mechanical restraints as interventions. 20 U.S.C. § 1414(d)(3)(B)(i); 34 C.F.R. § 300.324(a)(2).

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                       Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

137.   IDEA's procedural safeguards require that parents be informed of and meaningfully participate in all significant decisions affecting their child's education, placement, and safety. 20 U.S.C. § 1415(b)(6).

138.   Branch ISD failed to provide S.T. with FAPE in the following respects: by subjecting him to repeated unlawful mechanical restraints that caused psychological trauma; by failing to include appropriate positive behavioral supports in his IEP to address his disability-related sensory challenges; by placing him in a classroom with a teacher holding no autism certification; by creating a hostile and abusive educational environment that denied him meaningful educational benefit; and by concealing the restraints from his parents, thereby depriving them of the opportunity to participate in decisions about his education and safety in violation of IDEA's procedural safeguards.

139.   These failures were not merely procedural but resulted in substantive harm, depriving S.T. of educational benefit and a safe learning environment.

140.   As a direct and proximate result, S.T. suffered loss of educational services, psychological trauma, and denial of FAPE.

**WHEREFORE**, Plaintiff demands judgment against Branch ISD on Count V, together with compensatory damages, injunctive relief requiring appropriate services and placement, reimbursement for private educational or therapeutic

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*
Case No.:

Michael L. Jones, Esq.
Jon R. Marko, Esq.

services necessitated by Defendants' violations, costs, and attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B).

## COUNT VI
Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132
**Against Defendant Branch Intermediate School District**

141. Plaintiff incorporates by reference all preceding paragraphs.

142. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

143. S.T. is a qualified individual with a disability within the meaning of the ADA. He was enrolled in Branch ISD's special education program and was otherwise qualified to participate in and receive the benefits of that program.

144. The purpose of Branch ISD's special education program was to provide S.T. with educational and developmental services in a safe, supportive environment in which his disability was accommodated and his dignity respected.

145. By subjecting S.T. to mechanical restraints, permitting a teacher with no autism training to manage his classroom, and creating an abusive educational

environment targeting students because of the severity of their disabilities, Branch ISD denied S.T. the benefits of its educational program by reason of his disability.

146.  As a direct and proximate result, S.T. has suffered the harms described herein.

**WHEREFORE**, Plaintiff demands judgment against Branch ISD on Count VI, together with compensatory damages, injunctive relief, costs, attorneys' fees, and all other relief this Court deems just and proper.

## COUNT VII
Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794
**Against Defendant Branch Intermediate School District**

147.  Plaintiff incorporates by reference all preceding paragraphs.

148.  Section 504 of the Rehabilitation Act provides that a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

149.  Branch ISD receives federal funding under IDEA and is therefore subject to Section 504.

150.  S.T. is a qualified individual with a disability. Branch ISD, by reason of S.T.'s disability, excluded him from the meaningful benefit of its federally funded educational programs in the manner described in this Complaint. The ADA and

**Complaint and Jury Demand**
*Troyer v. Branch ISD, et al*                                        Michael L. Jones, Esq.
Case No.:                                                            Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

Section 504 "cover largely the same ground" and are analyzed together. *Gohl*, 836 F.3d at 682

151.   As a direct and proximate result, S.T. has suffered the harms described herein.

**WHEREFORE**, Plaintiff demands judgment against Branch ISD on Count VII, together with compensatory damages, injunctive relief, costs, attorneys' fees, and all other relief this Court deems just and proper.

### COUNT VIII
Michigan Persons with Disabilities Civil Rights Act (PWDCRA)
MCL 37.1101 et seq.
**Against Defendant Branch Intermediate School District**

152.   Plaintiff incorporates by reference all preceding paragraphs.

153.   The PWDCRA prohibits educational institutions from discriminating against persons with disabilities in the provision of educational services. Specifically, MCL 37.1402 prohibits an educational institution from excluding, expelling, limiting, or otherwise discriminating against any person with a disability in admission, terms, conditions, or privileges of the educational institution because of a disability or the use of adaptive devices or aids.

154.   An "educational institution" under the PWDCRA includes public school districts and their agents. MCL 37.1401.

155.   S.T. is a "person with a disability" within the meaning of the PWDCRA. MCL 37.1103 defines disability to include conditions that affect one or

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                              Michael L. Jones, Esq.
Case No.:                                                                         Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

more of the life activities of an individual, including a condition such as non-verbal autism, which substantially limits communication, motor function, and self-care.

156. Branch ISD, through its agents, subjected S.T. to discriminatory mistreatment in the provision of educational services because of his disability. The mechanical restraints, physical abuse, failure to provide an appropriately trained teacher, failure to implement proper positive behavioral supports, and abusive classroom environment all constituted discrimination against S.T. in the conditions and privileges of his educational placement because of the nature and severity of his disability.

157. Branch ISD's failure to accommodate S.T.'s disability by providing appropriate behavioral supports, a qualified autism-certified teacher, and a safe learning environment constitutes a failure of accommodation that resulted in discriminatory harm. MCL 37.1102.

158. Pursuant to MCL 37.1606, Plaintiff brings this civil action for damages, injunctive relief, and attorneys' fees.

159. As a direct and proximate result of Branch ISD's PWDCRA violations, S.T. has suffered the harms described herein.

**WHEREFORE**, Plaintiff demands judgment against Branch ISD on Count VIII, together with compensatory damages, injunctive relief, costs, attorneys' fees pursuant to MCL 37.1606, and all other relief this Court deems just and proper.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*
Case No.:

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW

## COUNT IX
### Assault and Battery
### Against Defendants Christa Roop and Kathy Morick

160.   Plaintiff incorporates by reference all preceding paragraphs.

161.   Under Michigan law, a battery is an intentional, unconsented, harmful or offensive touching of the person of another. An assault is an attempt to commit a battery or an act placing another in reasonable apprehension of receiving an immediate battery. *Binay v. Bettendorf*, 601 F.3d 640, 653 (6th Cir. 2010) (citing *People v. Nickens*, 470 Mich. 622, 685 N.W.2d 657, 661 (Mich. 2004)).

162.   Defendant Roop committed battery against S.T. by intentionally and repeatedly causing offensive and harmful contact by tying him to a chair with scarves around his torso and legs, restraining him completely against his will while he thrashed and struggled to escape. Defendant Roop committed assault on each occasion she approached S.T. with scarves for the purpose of binding him, placing him in reasonable apprehension of imminent restraint.

163.   Defendant Morick committed battery against S.T. by intentionally striking him in the face and/or mouth on at least one occasion.

164.   S.T. did not consent, and as a non-verbal autistic child in compulsory state custody, was entirely incapable of providing meaningful consent. No reasonable person in S.T.'s position would have consented.

41

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*
Case No.:

Michael L. Jones, Esq.
Jon R. Marko, Esq.

165.  Defendants Roop and Morick acted intentionally and without legal justification. The only uses of physical force authorized under Board Policy 5630 are to "quell a disturbance threatening physical injury to others," for self-defense, or for the protection of persons or property. None of these circumstances applied here.

166.  Under Michigan law, governmental employees who commit intentional torts are not automatically immune. Immunity from intentional torts is available only where the acts were undertaken in good faith and without malice. *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 228-29 (Mich. 2008). Defendants Roop and Morick cannot satisfy the good faith and lack of malice element. Tying a non-verbal autistic child to a chair with scarves for the convenience of staff, in direct violation of Branch ISD's own policies and Michigan law, and striking a disabled child in the face while instructing a witness "You didn't see that," constitutes conduct performed with malice and a wanton and reckless disregard for S.T.'s rights and safety. See *Odom*, 760 N.W.2d at 225.

167.  As a direct and proximate result of the assault and battery, S.T. suffered offensive bodily contact against his will, psychological trauma, emotional distress, fear, anxiety, humiliation, and loss of dignity.

**WHEREFORE**, Plaintiff demands judgment against Defendants Roop and Morick on Count IX, together with compensatory and punitive damages, costs, and all other relief this Court deems just and proper.

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                      Michael L. Jones, Esq.
Case No.:                                                          Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW

## COUNT X
### Gross Negligence
### Against Defendants Roop, Morick, Jenkins, Adair, Conroy, and Johnson (in their Individual Capacities)

168.    Plaintiff incorporates by reference all preceding paragraphs.

169.    Pursuant to MCL 691.1407(2), individual governmental employees are immune from tort liability unless their conduct constitutes gross negligence that is the proximate cause of the injury. MCL 691.1407(8)(a) defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Bellinger v. Kram*, 319 Mich. App. 653, 659-60 (2017). Gross negligence has been characterized as "a willful disregard of safety measures and a singular disregard for substantial risks." *Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 675 (E.D. Mich. 2015).

170.    Plaintiff acknowledges that where conduct constitutes an intentional tort, Michigan courts will not allow a plaintiff to recast it as gross negligence. See *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007). Accordingly, this Count is pleaded in the alternative to Count IX (Assault and Battery), and is directed at the negligent failures of supervisory defendants and, to any extent the finder of fact determines that Defendants Roop or Morick's conduct was reckless rather than intentional, against those defendants as well.

171.    Defendants Jenkins, Adair, Conroy, and Johnson received direct, credible, specific reports of ongoing illegal restraint and physical abuse. Their

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                        Michael L. Jones, Esq.
Case No.:                                                                   Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

response — telling the reporting employee "not to start drama," failing to investigate, failing to notify parents, failing to report to MDHHS, and permitting an unqualified teacher to continue supervising severely disabled non-verbal children — constitutes conduct so reckless as to demonstrate a substantial lack of concern for whether injury would result. This is affirmative, reckless inaction in the face of known, obvious, substantial, continuing risk of harm to a child who could not protect himself or report the abuse to his parents.

172.   *Bellinger*, 319 Mich. App. at 660-61 supports that affirmative actions contrary to professionally accepted standards, combined with concealment, establishes gross negligence.

173.   To the extent any defendant's conduct is found to be reckless rather than intentional, such conduct was the direct and proximate cause of S.T.'s injuries, constituting gross negligence and defeating the immunity otherwise available under MCL 691.1407(2).

**WHEREFORE**, Plaintiff demands judgment against the individual Defendants on Count X, together with compensatory damages, costs, and all other relief this Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff S.T., by and through his Next Friend Joel H. Troyer, respectfully requests that this Court:

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                      Michael L. Jones, Esq.
Case No.:                                                         Jon R. Marko, Esq.

**A.** Enter judgment in favor of Plaintiff and against all Defendants on all applicable Counts;

**B.** Award compensatory damages in an amount to be determined at trial for:

- Past and future emotional distress, mental anguish, and psychological trauma;

- Fear, anxiety, panic responses, and loss of sense of safety;

- Humiliation, indignity, and loss of dignity;

- Loss of educational services and denial of FAPE;

- All other damages proven at trial;

**C.** Award punitive damages against individual Defendants in amounts sufficient to punish their deliberate, malicious, and conscience-shocking conduct and to deter similar conduct in the future;

**D.** Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), 20 U.S.C. § 1415(i)(3)(B), and MCL 37.1606;

**E.** Award pre-judgment and post-judgment interest as allowed by law;

**F.** Grant injunctive relief, including:

- Requiring Branch ISD to implement and enforce policies ensuring proper training of all staff on autism, lawful restraint, and mandatory reporting;

- Requiring Branch ISD to ensure all classrooms serving students with autism are staffed by properly certified and trained teachers;

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                         Michael L. Jones, Esq.
Case No.:                                                            Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

- Requiring Branch ISD to implement functioning camera surveillance in all classrooms serving non-verbal students;

- Requiring Branch ISD to develop and implement policies ensuring immediate parental notification of any restraint, seclusion, or abuse allegations;

**G.** Award all other relief this Court deems just, equitable, and proper.

Respectfully submitted,

/s/ *Michael Jones*
Michael Jones (P85223)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Date: June 24, 2026                 Email: michael@markolaw.com

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                  Michael L. Jones, Esq.
Case No.:                                                      Jon R. Marko, Esq.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT
## SOUTHERN DIVISION

S.T., a minor, by and through his Next Friend, JOEL
H. TROYER,

**Plaintiff**

v.

BRANCH INTERMEDIATE SCHOOL DISTRICT;
KRIS JENKINS, in her individual capacity;
DARRIN ADAIR, in his individual capacity
TRISTA ROOP, in her individual capacity;
KATHY MORICK, in her individual capacity;
CHRISTA CONROY, in her individual capacity;
NATE JOHNSON, in his individual capacity,

    Jointly and severally,

    **Defendants.**

Case No.

Hon.

**Complaint and
Jury Demand**

**MICHAEL L. JONES (P85223)**
MARKO LAW, PLLC
Attorney for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
michael@markolaw.com

## DEMAND FOR JURY TRIAL

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *Michael Jones*
Michael Jones (P85223)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Email: michael@markolaw.com

Date:  June 24, 2026

**Complaint and Jury Demand**

*Troyer v. Branch ISD, et al*                                    Michael L. Jones, Esq.
Case No.:                                                        Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW